*150 Opinion of the Court,
by Ch. J. Boyle.
THIS was a bill in chancery, exhibited by Nelson’s heirs against Clay. They allege, in substance, that ancestor, Edward Nelson, having obtained a certificate from the commissioners, for a settlement and pre-emption, caused the settlement certificate to be en*-ered an(l surveyed, and obtained a patent therefor; but, being unable to advance the money for the' preemption warrant, and to defray the other incidental expenseS) he made a verbal contract with James Estill, to clear out the land, for which Estill was to have 400 acres, and their ancestor the remaining 600 acres of the preemption; that Estill by souje means procured an assignraent ^ pre-emption warrant to himself, and made an entry thereon in his own name, and having departed this the same has been surveyed, and a patent issued ^ieref01b *n fhe name of Benjamin Estill, his heir at law; that, with his consent, they settled, many years ago, upon a part of the pre-emption, and still retain the Posscssj°n> but, finding a difficulty in procuring the ti-tie, and the land being interfered with by other adverse claims, they entered into articles of agreement with the defendant, Clay, bearing date the 22d of August, 1807, by which be agreed to investigate their claim, for which they, on their part, agreed to give him one third of so much of the settlement and preas 1T)ight be recovered of Estill and saved from other conflicting claims, and they gave to Clay full *151 power to sue and defend suits, to arbitrate, or to settle by compromise; that, in 1808, Clay instituted suit in their names, against Benjamin Estill and other children of James Estill, as his heirs, &c. claiming only a moiety of the settlement and pre-emption; that heirs of Estill filed their answer, controverting the right of the complainants, and that the suit was afterwards c'ompromised by Clay, and entered “dismissed—to agreed;” that Clay, in virtue of the compromise, tained a conveyance from Estill’s heirs for the whole of the pre-emption, and took the conveyance to himself, he agreeing to indemnify them against the complainants; that he has since renounced the contract with the Complainants, denied their right to any part of the land, and notified them by letter to quit the possession, and has actually brought suit and recovered in ejectment there for, against them. They pray that a division of said pre-emption of 1,000 acres may be made, of two thirds to them and one third to Clay, in such manner as to divide the safe and uncertain lands, and to preserve to them their improvements, and they moreover ask for relief.
A verbal con^le of°]and°, prior to the statute aís^oodf and’ w;n be’d'e-creed specifically-
^ person who seeks equity, ™u.s^ same
Clay, in his answer, admits that the ancestor of the complainants obtained the certificate for a settlement and pre-emption, as aliedged by them, and that James Estill made a verbal agreement to clear out the land; but insists that the agreement extended to the settlement, as well as the pre-emption, and that he was to have a moiety of both. Clay also admits that he entered into a contract with the complainants, to in gate their claim, upon the. terms alleged by them; that he brought suit in their name against the Estills, claiming a moiety of. the pre-emption, and that he after-wards compromised the suit, and took a conveyance to himself, of the whole pre-emption; but he alleges that the Estills had controverted the right of the complainants to any part of the pre-emption, and that he did not then, nor does he now believe that their claim could be supported in a court of justice; and that he had several other suits and claims against Estill’s heirs, and they agreed to convey to him in consideration of the general compromise and adjustment of his other claims against them. He states that he did not make the compromise ostensibly for the complainants, or in their names, but under the conviction that their claim could *152 not be supported, and therefore he indemnified Estili’d heirs against it.. He professes, however, to be willing to convey to the complainants two thirds of one moiety, that being all he is entitled to, as he believes.
The court below, being of opinion that the complainants were entitled to two thirds of 600 acres of the pre-emption, and Clay to the residue, directed, by an interlocutory decree, a division to be made accordingly, so as to give to the complainants a due proportion, in regard to their interest, of the safe and uncertain lands,, and preserve to them their improvements; and a division having been made in pursuance of that direction, Clay, by a final decree, was ordered to convey, &c.
From that decree the complainants have appealed, and Clay' has prosecuted a writ of error, each party contending that the decree is more favorable to the other than it ought to have been; so that the whole case is presented to the court, and we must decide whether either party has obtained more or less than in justice they are entitled to.
It is perfectly clear, we think, that Clay is not entitled to any benefit under the contract with the complainants to investigate their claim. It is shown, that there are adverse interfering claims covering a considerable part of the settlement and pre-emption, and it is not pretended by Clay, that lie has taken any step for the adjustment of those conflicting claims. The only thing which it appears that he did towards the fulfilment of the contract with the complainants, was to bring the suit against Estill’s heirs; and from the manner in which that was terminated, it is manifest that he deserted the interest of the complainants, and instead of making the suit, is he ought to have clone, the means of obtaining the land for them, converted it into an instrument for his own purpose exclusively; for, according to his own statement of the transaction, the compromise of the suit was made, not for the benefit of the complainants, nor in their names, and their claim formed no part of the consideration of the conveyance made by Estill’s heirs to him. The conveyance, as he alleges, was made in consideration of other suits and claims which he had against Estiil’s heirs, and lie agreed to indemnify them against the complainants’ claim, not because he intended to satisfy them, but because he *153 was convinced that their claim could not be supported in a court of justice. In short, he seems to labor, in his answer, to show that it was the object of the compromise to exclude the complainants from any share or interest in the land obtained in virtue of the compromise; and that it was his intention that such should be the effect of the compromise, is abundantly evinced by his subsequent conduct; for, in repeated conversations with others, he not only denied the right of the complainants to any part of the land, but claimed the whole as his exclusive property, and offered to sell it with warranty; and in the letter in which he notifies the complainants to quit the possession, he tells them, “ that the Estills had sworn in their answers, that James Estill had purchased the pre-emption of their father, and the suit was thereupon dismissed, as the land could not be recovered;” and he concludes by saying, “ the Estills had given up that pre-emption to pay some judgments against them, due Thomas Lewis and others. You will have to move away, or suits will be.brought against you all, for back-rents and damages.”
The threat which he denounced in this letter against the complainants, he afterwards attempted to carry into, execution, by bringing suit and recovering judgment in ejectment against them, and they were thus driven to the necessity of asserting, in a suit against Clay himself, the title which they had employed him to procure for them in the suit against the Estills.
The complainants have in fact, therefore, derived no-benefit from the agency of Clay, and unless we were-prepared to say that an agent who betrays his trust, and converts the powers confided to him to his own private advantage, instead of employing them for the benefit of his principal, is entitled to the reward which could be due only for a faithful discharge of his duties,, we must conclude that Clay has forfeited all claim to any benefit under the contraot with the complainants.. As, however, he has received the title from the Estills, for a consideration with which they are satisfied, he is,, no doubt, entitled to their interest, and the complainants cannot have a right to relief against him, to a greater extent than they originally had against the Es-tills. The extent of their right to relief must, therefore, depend upon the terms of the contract between their ancestor and James Estill. That contract hav *154 ing been a verbal one, cannot affect the case; for the contract was made prior to the passage of the act against frauds and perjuries, which requires contracts for the sale of land to be in writing. -
It is very clear, from the evidence in the cause, that Estill’s contract embraced the settlement as well as the pre-emption, and it is satisfactorily shown that he or his representatives defrayed the expenses of carrying both into grant. That for doing this he was to have a part of the land, is equally clear; but in what proportion it was to be divided between him and Nelson, is left extremely doubtful by the evidence. The only witness who states that he was present at the time of making the contract, deposes that the land was to be divided in equal moieties; but several others swear, that in conversation afterwards with Estill, they heard him repeatedly say that he was to give to Nelson six hundred acres of safe land. The latter, it seems from the nature of the interfering claims, would be most beneficial to the complainants, and we have no doubt, if Nelson was, by the contract with Estill, to have.only six hundred acres, that it was to be safe land; but the complainants, prior to the institution of their suit by Clay against Estill’s heirs, and pending that suit, only claimed an equal moiety, and in their bill in this case they do not assert the contract to have been for safe land; but, on the contrary, in their specific prayer for relief, they ask' for a division of the safe and unsafe land. Besides, it is proved to have been more usual for those who undertook to clear out settlements and pre-emptions, to do so for a moiety of the safe and unsafe lands, than to bind themselves to secure for the proprietors a less portion of safe land; and this circumstance ought, where the evidence is as doubtful as it is in this case, to turn the scale against the claim for safe land. Upon the facts of the case, therefore, the claim of the complainants for six hundred acres of safe land, is of too doubtful a character to be sustained. The evidence is, however, sufficient to show that they are entitled to an equal moiety of the whole settlement and pre-emption; but to have entitled themselves to a decree for that, they should have offered to convey a moiety of the settlement, the title of which, from their own allegations, appears to be in them. The bill, indeed, only goes for a division of the pre-emption; but from the agreement *155 of compromise between Clay and Estill’s heirs, referred to in the bill, it appears that Clay was entitled to the interest which the Estills held in the settlement, as well as in the pre-emption, and it is perfectly clear, therefore, that the complainants cannot be entitled to a conveyance from Clay, of any part of the pre-emption, without conveying to him a due proportion of the settlement; for it is a settled principle, that he who seeks equity, must do equity in relation to the same subject. They ought, therefore, to have brought the settlement into partition, and offered to convey to Clay a due proportion thereof, or have shown some sufficient reason for not . doing so, before they could have a decree for a part of the pre-emption. The bill is, therefore, in this respect, too defective to justify a decree for the complainants.
The decree must, therefore, be reversed, and the cause be remanded, that the complainants may amend their bill, and such other proceedings be then had as may be agreeable to equity, and not inconsistent with this opinion.
Clay must recover his costs in both the appeal and writ of error.
Hardin and Talbot presented the following petition for a rehearing:
The counsel for the complainants in the original cause respectfully ask permission to recall to the consideration of the court, some parts of the opinion de- ¡ livered in this case.
The complainants, after having employed the defendant as their agent, to prosecute their claim as heirs to their father, to the land in question, against the heirs of James Estill, who held the legal title, and after the defendant had betrayed their interests, and procured the estate to himself, were driven to a court of equity, to make out their case from the best information they could obtain. That claim, owing to the peculiar situation of this country at its first settlement, the death of both of the original contracting parties, leaving the heirs in their minority, and owing to the conduct of the defendant whilst he pretended to act for them, was one of long standing.
*156 By the bill they charge that their ancestor was entitled to 600 acres of safe land, part of the tract in question. They prove by more witnesses than one, that SUch was the contract; but other witnesses, and, in the opinion of the court, the weight of evidence, prove that their father was entitled to an equal moiety of the land, as held under his settlement and pre-emption, and not to any quantity of safe land; and because the complainants, who procured the legal title to the settlement right, have not, by their bill, offered to convey to the defendant one moiety of that right, the court, in the opinion rendered, say they are not entitled to relief, and can only obtain it upon amending their bill and making that offer.
That a' complainant must do equity, before he can have equity, is a maxim not to be controverted; but that a complainant shall not only foreknow what he can prove, but also what his adversary can prove, and likewise what the court shall determine, upon weighing contradictory evidence and applying the rules of law and principles of equity to that evidence, to be the relative rights of the parties, and must offer in his bill to do what is proper to be done on his part, as the result of the court’s opinion, is respectfully conceived to go further than former precedents or justice requires. This rule will often place the complainant in the power of the defendant; for if the complainant makes an offer, predicated on one state of facts, the defendant, by taking or withholding evidence which varies one material fact, may, on hearing, show that the offer made in the bill was not such as should have been made; and if the complainant moulds his offer by an amended bill, the defendant must have time to answer, and take new proofs, and may show some new fact, that may require another amendment and another round of preparation. But if this rule, that a complainant must offer to do a minor act, before he asks a court to award to him the •major, be correct, is it not because the offer is, by operation of law, a consideration precedent? and if so, must it not be performed before bill filed? and is it not calculated to increase the mazes of land litigation, already too perplexing?
But a still stronger objection to this position is, that it seems to place the rights of the complainant, not upon the law of the land, but measurably upon his own cor? *157 rect judgment, extent of information and prudent election. This will be sufficiently difficult for best informed; but who are to make this election for the infant and the lunatic? Are their rights to be hung in abeyance, until they shall be capable of acting for themselves, and in the mean time the profits of their estate be eaten up by their wrongdoer, and owing to the death of their witnesses, until wrong shall ripen into right?
There are certainly cases in which the chancellor will refuse to give his aid to a complainant, where he comes into court with unclean hands; but they are cases of fraud and mal-practices, not cases of misjudgment as to matters of legal right, or misfortunes in having the lightest scale in the balance of doubtful evidence.
All that equity requires in such cases, it is contended, consists in a bill which sets forth, with reasonable certainty, a claim to the land in question, and a wrong done in withholding it. If the proof supports this, the chancellor, in his controlling power over the parties, and discretion in the mode and manner of giving relief, can, and ought to require the complainant to do every act which he, after examining the pleadings and proofs, shall hold to be'proper on either part; and on their failure or refusal, he can dismiss the bill and terminate the controversy, or he can give such partial relief as their particular circumstances may justify.
It frequently happens, that thé parties, in the progress of a contested cause, depending on a variety of facts, and presenting several questions, lose sight of, or omit, minor matters, which may be proper in the details of a decree, and which may or may not be proper to be presented to the court, as the chancellor shall decide on preliminary questions. These matters can, most generally, be better presented, and at less ex-pence, after an interlocutory vdecree by a survey, an account before auditors, or a report of commissioners in chancery, than in the first instance, with the proofs as to the chief controversy. Indeed, it is respectfully suggested, that there would be a great saving óf time in the courts of justice, by adopting the practice of the court of chancery in England, where the validity and deduction of title to land, is, as a matter of course, referred to a master of examine into, and the court are not troubled pvith it, unless op his special report, op exceptions to his. *158 report. See the forms of decrees in Equity Draftsman, p. 648 and subsequent, and the manner in which the subject is spoken of in the reporters, 2 P. Wms. 629-Q32, and the cases there cited; 1 Vesey jr. 284, 565; 5 Vesey jr. 720, 730, 737.
In the case in question, it is contended that the circuit judge, upon the cause being remanded to him, upon the general questions settled by the opinion of this court as applicable to the case, without the order in relation to amending the bill, would have full power to require the complainants to exhibit to the commissioner to be appointed by the court, in the nature of a master in chancery, their title to the settlement survey of their father, to show their possession, and to allow either party to exhibit to such commissioner any interfering claims, and all other matters relative thereto; and upon a report in relation thereto, the rights of the parties would be as completely in the power of the court, as they could be upon an amended bill and answer, and proofs in relation to these matters; and surely there would be a great saving of time and expense to the parties. See 1 Har. Chan. Prac. 622, where it is said, the omission 'or imperfect stating of a material circumstance or fact, renders an interlocutory decree and reference to a master, &c. proper.
Another point to which they would ask the furthér consideration of the court, relates to the costs. By the opinion rendered, the complainants are subject to all the costs of their appeal and the defendant’s writ of error. A principal part of the controversy arose out of the contract of the defendant to manage this claim for the complainants against Estill’s heirs, and his improper conduct it that agency. The voluminous exhibits and exceptions of the defendant, which compose at least one half of the record, relate to that part of the cause. The court below sustained the defendant’s claim to one third of the complainants’ land, for his conduct in that agency. We have brought the cause here, and that part of the decree is, at our instance, reversed. The decree which is rendered by this court, is considered more beneficial to the complainants than the decree of the court below; for there is that in the cause, that leads to the belief that the settlement is all, or nearly all, swallowed up by a superior claim. What we are directed by your opinion to surrender, is of only nominal value, *159 while we recover more land with a good title. It is, however, contended, be this as it may, that as we have succeeded in one principal matter of controversy, and procured a reversal as to that matter, the court, in the exercise of that sound legal discretion with which they are vested in cases of partial reversal, should not make us pay costs. 2 Dig. L. K. 328; Brooks vs. Clay, 2 Bibb 503-4. And if the view above presented be correct, that our bill does not require amendment, we ought to recover costs.
A reconsideration and amendment of the decree rendered, or a rehearing of the cause, is therefore respectfully requested.
HARDIN & TALBOT, for Comp’ls.
But the court, on consideration, overruled the petition.