Petition eor a Re-hearing.
The Court (as it seems to me,) having formed an erroneous impression of a material feature of the case as presented by the record, and. having expressed an opinion upon the main point of law in this controversy, contrary to my understanding of a series of decisions of this Court — as counsel for the defendant, I am compelled to urge an application for a re-consideration of the decision rendered in the cause.
The bill, upon which the decree mentioned in the *456 opinion of the Court, was rendered, was exhibited by Charles W. Hall, for the use of Wdrren, to recover an alleged debt against John Hall and his surety, Robert McGruder, both residents of Kentucky when the suit was commenced. The former answered, showing that it wTas necessary to take an account between the parties, before it could be ascertained whether the debt was unpaid or not; but pending the suit, he died at his residence in Louisiana, having made his will, of which probate was afterwards granted to Charles Mulholland, as executor, who was also a resident of Louisiana. The widow and children of the debtor (of whom the defendant was one,) were made devisees of the whole estate, and continued to reside in Kentucky from the commencement to the termination of the suit.
An, amended bill was exhibited before the death of John . Hall, in which it was alleged that he was insolvent, and had no property in Kentucky; that the complainant expected to levy the debt against McGruder, the surety alone; that he was about to dispose of his effects to defeat the claim of the complainants; against which an injunction was‘prayed, and granted, upon the affidavit of Warren. On the death of John Hall, a bill to revive the suit against the executor, and against the widow and children as devisees, and the children — not A. J. Hall alone — as heirs at law of the debtor, was exhibited; and in this bill, it was again alleged, not that the complainant had no knowledge of any estate of John Hall in Kentucky — but “ that he had no estate of any kind whatever in said State.”
Mulholland was proceeded against by publication; and the record is not entirely satisfactory that the widow and heirs had been notified by the execution of process. The subpoena bears date 11th November, 1830, and the return of the officer the 10th of the same month. One of the children was an infant, who made answer by guardian. ' The decree was rendered for the debt — to be levied, first, of the assets in the hands of the executor unadministered, or which might come to his hands to be administered; secondly, of estate descended, or which might afterwards descend to the heirs: thirdly, of estate *457 devised by the debtor, and lastly, of the estate of Mc-Gruder, the surety in the note sued on. Upon this de- ’ cree, writs of fieri facias were sued out at the same time against the executor and the heirs, by virtue of which the slaves in question were seized and sold — Warren himself becoming the purchaser. After which, the decree was reversed, and pronouncéd void as against the executor, by this Court.
Before the death of John Hall, he had sold the slaves ' to A. J. Hall, and made him a bill of sale f<pr them. Upon this bill of sale, he relied for the recovery of the slaves in the Circuit court; and Warren upon his purchase at ■the sheriff’s sale. He offered to introduce .evidence to prove that the bill of sale was fraudulent as against creditors, but it was rejected as irrelevant. • ' " ■
This statement, it appears to me, embraces and 'contains a correct view of all the facts of the case, as presented upon the record. The Court seems to understand the complainant in the suit in chancery, as stating merély his want of knowledge of estate left by John Hall, the debtor, in Kentucky; and not to deny or negative the fact that he had left estate in., the State. But it appears to me, that the statements in the. amended bill and the bill of revivor, with the affidavit to, and the object of, the amended bill, should be taken as conclusive,, that there was no estate in Kentucky which could have-descended to the children of John Hall, as heirs at law, for any purpose; and if so, I would submit, whether the decree, as against the heirs, should have the effect given to it by the opinion delivered: that is-to say, the effect to confer any title upon a purchaser under it. It is true that, for this reason, the decree may not be regarded as void as against.the children of John Hall; yet; it would seem to me that a decree pronounced upon such a state of case, should not be construed Or held to confer upon, a child or a set of children, the character or condition of an heir or heirs. The mere- relationship of father and child can in no case confer the character- of heir. The relationship, whatever it may be, and- the possibility of ’ taking or recovering the estate of the ancestor, is essential. But in the case in question, .the fact was solemnly *458 made known to, and was necessarily before the Court, that there was no estate whatever, which the children could ever receive or enjoy as heirs; and yet a decree was pronounced, that a debt should be levied against as heirs. Nothing could be more nonsensical; and in the -present controversy, without regarding the decree as void, it should be regarded as a dead letter, or nugatory; and consequently, the purchaser at the sheriff’s sale, could derive no title whatéver from his purchase — the decree being void against the executor. I confess, I have no authority directly upon this point. It is possible, however, that some direct authority could have been produced upon a thorough examination, which has not been in my power. I will, however, refer to Logan vs. McChord, 5 Litt., 159; Tevis vs. Richardson, 7 Monroe, 659; Ballard vs. Daviss, 1 J. J. Mar., 377, and Pulliam vs. Pulliam’s Heirs, 4 Dana, 123, and more especially the latter. These causes appear to establish a distinction between decrees or judgments void, and such as, although not void, have no effect. In the latter case, the decree seems to have been held not void, and yet a dead letter. If that idea will apply to any conceivable case, it would to' the decree in the case of C. W. Hall against John Hall’s Heirs; and yet, in the present controversy, it is held sufficient to confer a title upon the purchaser at the sheriff’s sale; and that, too, against the very party who had been solemnly assured that the complainant had no claim against him.
The Court has expressed the opinion that, if the bill of sale was made to defraud the creditors of John Hall, the defendant, who was his son, is supposed by the law to hold the slaves, as heir, for the benefit of creditors; and this, the Coyirt says it understands to be the law of the land. No authority, however, is cited or referred to; and with much deference for the Court, I think the law is clearly and conclusively settled to the very reverse of the position. The cases of Gillispie vs. Gillispie’s Heirs, 2 Bibb, 91; Dale vs. Harrison, 4 Bibb, 65; Blight’s lessee vs. Atwell, 7 Monroe, 268, all seem to me to be, although not directly opposed to the position, yet to be inconsistent with it. But I marvel that the Court should have *459 r ead and cited the case of Ralls vs. Graham (4 Monroe, 120,) and yet hold the opinion that, if the bill of sale was fraudulent as against the creditors of the maker, the son is adjudged to hold, as heir, for the benefit of creditors. In that case, the Court held this language:— “ Deeds fraudulent in fact, as well as deeds not fraudu- “ lent, but not recorded as our statutes require, até obli- “ gatory on the grantor, his heirs or devisees and all “ volunteers under him, and are bad as to only two de- “ scriptions of persons, to wit — purchasers for a valuable “ consideration without notice, and creditors.
“As to these, the grantor is adjudged still to hold the “ title; but this reservation in favor of these two classes of per- “ sons, is not such title in the grantor as can be transmitted by “ devise or pass by descent. As to the heir or devisee, the “ former fraudulent or unregistered grant is a bar to “ his taking any thing. For it would be absurd to say, “ that such grant is obligatory against the heir or devi- “ see, as to the crimes of the ancestor, and yet to say “ that, it is not obligatory to any beneficial purpose, and “ that, therefore, he took such title as can be sold.
“ Heneé in a suit against the heir or devisee, the for- “ mer can plead that he took nothing by descent, and “ the latter nothing by devise; and it cannot be replied “ that his ancestor, or testator, fraudulently conveyed “ an estate to another, with which the heir or devisee “ can be charged. ”
This passage seems to me to be conclusive in the present case, and to be as clear as language can make it, that, if the bill of sale from John Hall to Alfred J. Hall, was fraudulent as to creditors, there was no estate left in thd father which could be transmitted by descent to the son; and, therefore, that there was no estate transmitted to A. J. Hall, or the children of John Hall, by descent, which could be sold under the decree. But, if I am not under a strange misapprehension, the present opinion, although it maintains the position that, if the bill of sale was fraudulent as to the creditors of the maker of it, the title to the slaves passes to A. J. Hall by descent, for the purpose of conferring a title upon Warren, by virtue of his purchase; yet, to invalidate the *460 position of the Circuit Judge, and the reason upon which the evidence was rejected, it holds that, however fraudujent the bill of sale may have been as to creditors, the slaves could not have passed, under the law of Louisiana, either by descent from John Hall, or by his will— because, by the law of Kentucky, (and for this the case of Ralls vs. Graham and a note in Saunders’ Reports are cited,) the bill of sale was conclusive on John Hall. If it was conclusive for the one purpose, why should it not be for the other? As a remedy for creditors, it was not necessary that A. J. Hall should be adjudged to hold the slaves as heir to John Hall. The case of Ralls vs. Graham, with many .other decisions of this Court, shows that the remedy must be against the fraudulent grantee, as such, Or against the thing itself; and this is more consistent with the simplicity of the law. The remedy now first intimated for the creditor, could apply only in cases where the fraudulent parties stand in the relationship of father and son, or Some other relationship necessary to constitute, in one of the parties, the condition of an heir. This idea is also anomalous in making a rule of descent which confines the inheritance to one child only, of the many who are proceeded against in the same character.
There is one other position taken in the opinion, upon which I beg leave to make a suggestion. The suit in chancery was originally instituted against John Hall and the surety, for the recovery of the debt. It was after-wards revived — not against A. J. Hall, one of the children, alone — but against all of them, as heirs at law of the ancestor, in the ordinary acceptation of the term, to reach any estate which might have come to their possession by the law of descents, by lawful means. It was not the intention of the complainant to proceed against A. J. Hall as the fraudulent holder, or vendee, of the estate of the debtor. He had been notified that the suit was revived against him with others, simply as lawful heirs; and he had been solemnly informed that the complainant expected to recover of McGruder alone. The execution issued, on the decree, against all as heirs; and, by the opinion, it is now held that, under a sale by virtue of *461 that decree, A. J. Hall might be divested of his title or claim under the bill of sale, and that thereby Warren . , , . . , might become invested.
June 8.
This, however, does not seem just. The suit and the whole proceeding, under such circumstances, could be but the means of circumvention, instead of the fail-means of litigating a disputed matter. The mere fact, that A J. Hall was sued as one of the children of John Hall, could not be sufficient to notify him that he was to be charged as a fraudulent vendee. I will close by a reference, on this subject, to the case of Monroe vs. Wilson, 6 Monroe, 123. There, the party was sued as executrix, and it was held that she could not be accountable, in such suit, as a fraudulent devisee. Many other cases might be presented to show that the proceeding should ever be sufficient to notify the antagonist party of its object. J- G. Lyle.
Response.
All the points presented in thfe petition and the cases therein referred to having been fully considered before this case was decided, the opinions then expressed remain unchanged, and a re-ai-gument is therefore deemed by the Court, unnecessary. But the character of the petition entitles it to a respectful response, which we here briefly subjoin.
First. Conceding, as the learned and candid counsel seems to have done, that the decree was not void, we cannot concur in the intimated opinion that it was nevertheless a nullity, and that therefore the sale under it was altogether ineffectual. None of the cases cited can, when applied to the facts of this case, authorize any such conclusion.
The suggestion that the heirs had no estate in Kentucky, imported only that the complainant believed that they had none, because he had no knowledge of any, and was, as should be presumed, made only to show the reason why he desired to make the foreign executor a party. And therefore, being, as we considered and still consider it to be, synonymous, in effect, with an allega *462 tion that the complainant had no knowledge of any assets in Kentucky, that suggestion in the bill was accordingly so characterized in the opinion which we have been asked to reconsider; and was, as we yet think, properly so characterized. But this we deem an unessential matter: for, however that allegation should be interpreted, it could tend only to show that the decree against the heirs, to he levied of estate descended, was erroneous, and could not show that, if there had been any such estate here, it could not be taken by an execution on the decree; for certainly, as we think, an execution on a valid and subsisting decree for money, to be made out of any estate which may have descended to the heirs, might have been levied on any such estate within the jurisdiction of the Court, whether it had been here when the amended bill was filed, or only at the date of the decree, or had been brought here afterwards.
Where a party who is in debt, makes a conveyance with intent to defraud his creditors, & dies, if the conveyance is to one who can have no other claim to the prop erty — though the deed is void as to creditors, the heirs or devisees of the fraudulent grantor cannot be made liable for the property, as heirs or devisees; for the deed is as conclusive on them, as it was upon the grantor himself; & the creditors must, therefore, pursue the property into the hands of the fraudulent grantee. But, if the conveyance was made to a party who, if it had never been made, miglit have held the property as heir or devisee, he will be liable for its value as heir or devisee, or it may be taken under execution as assets of the grantor. — And herein, this case differs from Ralls vs: Graham Sfc.i Mon. 102, and Harrison vs. Camp-hell, Ante, 263.
*462 Second. Although the bill of sale from John Hall to his son A. J. Hall, even though fraudulent as to creditors, was good between the parties to it, and all persons claiming as volunteers under John llall; and although, therefore, as between A. J. Hall and his co-heirs and devisees, and the personal representative of his father, he could not' be considered as holding the slaves in the character of an heir, but should be deemed a purchaser holding in his own independent right — nevertheless, if the bill of sale was fraudulent, and therefore void as to his father’s creditors, he might, as to them,, be well' considered as holding the slaves as an heir, and subject, as assets in his hands, to be sold for their benefit, under any execution against him, to be levied on estate in his hands, liable as assets by descent.
When one holds and claims in his own right, property which he must have acquired and held as heir or devisee, had he not attempted to evade the just claims, upon that property, of the creditors of his ancestor, by a pretended purchase from him, for a false, though ostensibly valuable, jconsideration, surely his liability as heir, to the extent of the value of such property, cannot be thus eluded by his own fraudulent pretence of purchase.— The law, as we understand it, will not be thus mocked *463 and cheated. And hence it is said that, if an heir plead nothing by descent, it will be a good answer to the plea, to reply that he holds and enjoys estate under a colorable contract with his ancestor, made only for the fraudulent purpose of preventing a descent, and thereby evading the claims of the ancestor’s creditors. Shepherd’s Touchstone, 66; 2 Dyer, 255, and the cases cited in Roberts on Fraudulent Conveyances, 602-3,4. It would be strange indeed, if the law were otherwise; for when a conveyance to an heir is void, that is, has no effect, as to the creditors of the ancestral conveyor, no reason of fitness, or justice, or analogy, can preclude any such creditor from reaching the property so conveyed, just as he might have reached it in the hands of the heir, had there been no such void, and, of course, unavailing effort to evade the legal consequences of an open descent. And we are not acquainted with any authority for a contrary doctrine.
The case of Ralls vs. Graham et al. 4 (Mon., 120,) is perfectly consistent with the foregoing conclusion.
That case certainly cannot, when understood, be construed as intimating that an heir who is in possession of estate claiming it as his own under a void contract with his ancestor, may not be held responsible for it as heir, by a creditor, to defeat whose right the fraudulent contract was made. But it only decides that, when a stranger, who never could have held as heir, is in possession of property under a fraudulent contract prejudicial to creditors, a creditor of the fraudulent debtor must pursue the property in the hands of the fraudulent holder of it; and cannot, on the ground of the ancestor’s fraud, subject his heir, who did not acquire any interest in the property by descent, because the contract, though void as to the creditor, was nevertheless good and valid as between the parties and their representatives.
And this is as sound law, as it is plain justice. It would be certainly unreasonable to make an innocent and defrauded heir — merely because he has some of a fraudulent debtor’s blood in his veins — responsible for property which had been effectually withheld from himself by his ancestor’s fraud, and over which he has there *464 fore no control, and in which, no interest. Besides, to proceed against such an heir, for such a purpose, would be as preposterous as it would be unjust; because, having no interest in the property'pursued by the creditor', he would not be the proper person for litigating the question of fraud; and not only would the fraudulent party, in possession of the property as his own, be unaffected by any judgment which could be rendered against the heir, but the property could never be reached in his hands in any other way than by a proceeding in rem, or against himself personally, by the defrauded creditor.
But, when the heir himself holds the property for his own use, or is beneficially interested in it, none of the reasons for the rule established in Ralls vs. Graham et al. apply; and there can be no reason for exonerating him from liability as heir, or for exempting the property so fraudulently held under the color of a purchase, from execution, upon a judgment against him, in favor of one of the very creditors to defraud whom the fraudulent color was given, and as to whom, therefore, it is as if it never was.
To such an heir, it certainly cannot be material whether the judgment had been obtained against him without litigating the question of fraud, or without giving him notice that the creditor .would ever attempt to subject to the satisfaction of his judgment, the- property conveyed to him, or to his use, by the debtor; for, as if can never be subjected so as to deprive him of the right to establish his title to- it, by proving that he acquired it fairly, he can never be taken by surprise, nor prejudiced, even though the levy of an execution upon it may be the first intimation to him that the creditor intends to impeach his claim to it. And we have no doubt that, ii the bill of sale from John to A. J. Hall, was fraudulent and void as to the creditors of the former, the slaves attempted to be passed by it were subject to sale under the fieri facias which was issued on the decree against the heirs of John Hall. That point has been often so adjudged, and was virtually so decided in the case of Harrison vs. Campbell, at this term of this Court.
It does, therefore, seem to us that our decision in this *465 case is according to the established law, ancient and modern,-and that the petitioning counsel should not have much cause to umarvel” that we discriminated between this and the case of Ralls vs. Graham et al.
Nor have we felt the criticism on the supposed inconsistency of deciding, as we did, that, if the bill of sale of the slaves to A. J. Hall was fraudulent, he might be considered as holding them as heir, so far as the creditors of John Hall were concerned, and of saying, as we also did say, that the slaves could not have been claimed by the executor or other heirs, here or elsewhere, because, as to them, the bill of sale was conclusive.
The difference between the cases is this: if the bill of sale was fraudulent as to the decretal creditor, then, as to him, A. J. Hall, not being able to hold the slaves as a purchaser, must be considered as holding them for the creditor’s benefit, and as fully subject to the decree against himself as heir, as he could have held them had the pretended contract of purchase never been made; but the bill of sale, though fraudulent as to John Hall’s creditors, being valid as to himself, and therefore as to his heirs, devisees and personal representative, A. J. Hall must, as to all of these, be considered as holding the slaves as a purchaser, and not as a co-heir. And, consequently, it cannot, as the opinion suggested, be material,'in this case, to know how these slaves would have descended, or been distributable; nor whether they might have gone to the heirs, or to the personal representative, of John Hall, by the law of, his domicil, had he possessed any available right to them, at the time of his death, which could have passed to his representatives, in their own rights.
We still think this distinction is very obvious, notwithstanding the counsel’s astonishment expressed at the suggestion of it in the opinion he has assailed as announcing new, inconsistent, and indefensible doctrines. Being, for ourselves, well satisfied that it contains nothing either new, inconsistent, or indefensible, we are not inclined to change it.
Wherefore, tie petition for a re-hearing is overruled,